IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AVERY A. TRAINOR**, Plaintiff, | |
| v. | Civil Action No. 26-cv-3029-ACR |
| **UNITED STATES OF AMERICA**, *et al.*, Defendants. | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM REGARDING THE EFFECT OF *TALBOTT* ON THE ISSUE OF IRREPARABLE HARM**

John M. Simpson (D.C. Bar No. 256412)
1629 K Street, NW, Suite 300
Washington, D.C. 20006-1631
Telephone: +1 202 355-6419
Fax: +1 202 403-2285
E-mail: jmsimpson@litigationwarriors.com

Peter E. Perkowski (D.C. Bar No. 1013980)
PERKOWSKI LEGAL, PC
515 S. Flower St., Ste. 1800
Los Angeles, CA 90071
Telephone: +1 213 340-5796
E-mail: peter@perkowskilegal.com

*Counsel for Plaintiff LtCol Avery A. Trainor*

## TABLE OF CONTENTS

**ARGUMENT** .......... **1**

**I. *TALBOTT* ESTABLISHES THE LAW OF THE CIRCUIT THAT LTCOL TRAINOR IS SUFFERING IRREPARABLE INJURY** .......... **1**

**II. *TALBOTT* IS THE LAW OF THE D.C. CIRCUIT REGARDLESS OF WHETHER MANDATE HAS YET TO ISSUE** .......... **5**

**III. THE D.C. CIRCUIT DECISION IN *TALBOTT* LEFT UNDISTURBED THIS COURT'S ALTERNATIVE FINDING OF IRREPARABLE HARM** .......... **9**

**CONCLUSION** .......... **12**

# TABLE OF AUTHORITIES

## Cases


*Archdiocese of Washington v. Washington Metro. Area Trans. Auth.*, 897 F.3d 314 (D.C. Cir. 2018) .......... 2

*Association of Civilian Technicians, Montana Air Chapter v. FLRA*, 756 F.2d 172 (D.C.Cir.1985) .......... 7

*Ayuda, Inc. v. Thornburgh*, 919 F.2d 153 (D.C. Cir. 1990) .......... 6

*Brewster v. Commissioner of Internal Revenue*, 607 F.2d 1369 (D.C.Cir.1979) .......... 7

*Chalk v. U.S. District Court*, 840 F.2d 701 (9th Cir. 1988) .......... 10

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) .......... 2

*Cox v. Dep't of Justice*, 111 F.4th 198 (2d Cir. 2024) .......... 5, 6

*Dilley v. Alexander*, 627 F.2d 407 (D.C. Cir. 1980) .......... 8

*Elrod v. Burns*, 427 U.S. 347 (1976) .......... 2

*Elzie v. Aspin*, 841 F. Supp. 439 (D.D.C. 1993) .......... 10

*In re Vitamins Antitrust Litig.*, 2003 WL 21802133 (D.D.C. Aug. 4, 2003) .......... 7

*In re Zermeno-Gomez*, 868 F.3d 1048 (9th Cir. 2017) .......... 6

*Marin Audubon Soc'y v. FAA*, 129 F.4th 869 (D.C. Cir. 2025) .......... 6

*Martin v. Singletary*, 966 F.2d 944 (11th Cir. 1992) .......... 6

*May v. Gray*, 708 F. Supp. 716 (E.D.N.C. 1988) .......... 10

*McVeigh v. Cohen*, 983 F. Supp. 215 (D.D.C. 1998) .......... 9

*Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009) .......... 1, 2

*National Fed. of Federal Employees-IAM v. Vilsack*, 681 F.3d 483 (D.C. Cir. 2012) .......... 2

*Robinson v. District of Columbia Gov't*, 1997 WL 607450 (D.D.C. July 17, 1997) .......... 11

*Saunders v. George Washington Univ.*, 768 F. Supp. 843 (D.D.C. 1991) .......... 11

*Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022) .......... 1, 9

*Talbott v. United States*, 176 F.4th 720 (D.C. Cir. 2026) .......... 1, 2, 5, 8

*Talbott v. United States*, 775 F. Supp. 3d 283 (D.D.C. 2025) .......... 9

*Talbott v. United States*, No. 25-5087, Dkt 2149475 (D.C. Cir. Dec. 9, 2025) .......... 8

*Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650 (D.D.C. 1995) .......... 7


## Statutes


5 U.S.C. § 705 .......... 9

5 U.S.C. § 706(2)(B) .......... 4

Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq ........ 3

**Rules**

D.C. Cir. Rule 41 ........ 5

Fed. R. App. P. 41(b) ........ 5

Rule 41 ........ 7

Plaintiff, Lieutenant Colonel Avery A. Trainor, USMC ("LtCol Trainor") submits this Supplemental Memorandum in response to the Court's Minute Order of September 25, 2026, that the parties "address the impact of *Talbott v. United States*, 176 F.4th 720 (D.C. Cir. 2026), on the irreparable harm analysis in this case."

## ARGUMENT

### I. *TALBOTT* ESTABLISHES THE LAW OF THE CIRCUIT THAT LTCOL TRAINOR IS SUFFERING IRREPARABLE INJURY

In *Talbott*, the D.C. Circuit affirmed in part and vacated in part this Court's preliminary injunction against the Hegseth Policy. *Talbott*, 176 F.4th at 750. The two Circuit Judges in the majority agreed with this Court that the Hegseth Policy was likely unconstitutional, even under rational basis review. *Id*. at 737-47, 750-54. Because the *Talbott* plaintiffs had demonstrated that the Hegseth Policy is likely unconstitutional, the D.C. Circuit held that the *Talbott* plaintiffs' likelihood of success on the merits of their constitutional claim had necessarily demonstrated irreparable injury sufficient to sustain the preliminary injunction. This result followed from the principle that "the 'loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id*. at 747 (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)). As the D.C. Circuit explained:

> Here, Plaintiff-Appellees contend that they have been irreparably harmed because the Hegseth Policy deprives them of "constitutional freedoms," namely the loss of their right to equal protection of the law under the Due Process Clause. Appellees' Br. at 60. ***Since Plaintiff-Appellees have demonstrated a likelihood of success on the merits – i.e., that the Hegseth Policy violates the equal protection guaranteed to them by the Fifth Amendment – then it follows that they have been irreparably harmed.*** As we said in *Singh v. Berger*, where we held that the Marine Corps' refusal to allow plaintiffs to adhere to certain grooming standards in accordance with their religion was a violation of the Religious Freedom Restoration Act, the "indignity of being unable to serve for reasons that . . . bear no relationship to their ability to perform" constitutes irreparable harm. 56 F.4th 88, 110 (D.C. Cir. 2022) (citation modified); *see also* 11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 (3d ed. 2021) ("[W]hen there is an alleged deprivation of a constitutional right . . . many courts find that no further showing of irreparable injury is necessary.").

*Id*. at 747-48 (emphasis added).

The irreparable injury ruling by the D.C. Circuit in *Talbott* is consistent with D.C. Circuit precedent that establishing a likelihood of success on the merits of an alleged violation of an individual constitutional right is sufficient, by itself, to establish the irreparable harm necessary to support a preliminary injunction. *See Archdiocese of Washington v. Washington Metro. Area Trans. Auth*., 897 F.3d 314, 334 (D.C. Cir. 2018) ("[w]ere the Archdiocese to show a likelihood of success on the merits [of its First Amendment claim] . . . it would prevail on the final three [preliminary injunction] factors because "the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury,' [quoting *Mills*, 571 F.3d at 1312.] . . . Conversely, the deprivation of constitutional rights constitutes irreparable injury only to the extent such deprivation is shown to be likely"); *National Fed. of Federal Employees-IAM v. Vilsack*, 681 F.3d 483, 499 (D.C. Cir. 2012) (reversing denial of preliminary injunction against USDA drug testing policy that likely violated Fourth Amendment rights of employees; "[w]e also reverse the denial of the Union's request for a preliminary injunction, because the denial was based solely on the likelihood of the Secretary's success on the merits and the loss of constitutional protections constitutes irreparable injury") (citation omitted); *Mills*, 571 F.3d at 1312 (likely successful Fourth Amendment challenge to police neighborhood safety zone procedure established irreparable injury; "appellants have sufficiently demonstrated irreparable injury, particularly in light of their strong likelihood of success on the merits. . . . It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 . . . (1976) (plurality opinion)"); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) (likelihood of success on

First Amendment establishment clause claim was "sufficient, without more, to satisfy the irreparable harm prong for purposes of the preliminary injunction determination").

LtCol Trainor's claim of irreparable injury in support of her motion for preliminary injunction falls squarely within the D.C. Circuit's irreparable injury determination in *Talbott*. LtCol Trainor predicated likelihood of success on the merits for purposes of preliminary injunctive relief on both her Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq*., challenge to the May 29, 2026 M&RA Action, Dkt. 2-21, and on her challenge, under the Equal Protection component of the Fifth Amendment, to the constitutionality of the Hegseth Policy itself. *See* Dkt. 2-1 at 31-47. There is no dispute that, as an active-duty transgender service member, LtCol Trainor is subject to the same Hegseth Policy that the D.C. Circuit ruled was likely unconstitutional. The record also shows that LtCol Trainor's forced retirement and the Defendants' actions as embodied in the May 29, 2026 M&RA Action, and in the September 21, 2026, letter that re-issued the November 1, 2026 retirement date, are the result of that likely unconstitutional Hegseth Policy. The May 29 action cited MARADMIN 189/26 as its authority, and the September 21 letter cites the same directive. Dkt. 2-21 at 2; Dkt. 20-1 at 2. MARADMIN 189/26 applies only to transgender Marines and results solely from the likely unconstitutional Hegseth Policy. Absent the Hegseth Policy, MARADMIN 189/26 never would have issued, and absent MARADMIN 189/26, there is no evidence that LtCol Trainor's retirement date would have changed.

Nor did LtCol Trainor choose the retirement date she now challenges. On October 16, 2025, the Marine Corps approved a retirement date of June 1, 2027. Defendants then imposed a retirement date of November 1, 2026, a date she never requested. Whatever may be said about her request to retire, nothing about the acceleration of her retirement date was self-inflicted. Nor was the retirement request itself freely made. Her June 11, 2025 retirement request memorializes the

fact that she was "directed to either voluntarily separate or I would be involuntarily separated" and that, "per the guidance, I am forced to separate." Dkt. 2-17 at 7. Absent the Hegseth Policy, LtCol Trainor would not have sought retirement at the time that she did. Thus, the entire dispute surrounding LtCol Trainor's accelerated retirement date stems directly from the same Hegseth Policy whose likely unconstitutionality the D.C. Circuit ruled in *Talbott* constitutes irreparable harm sufficient to support a preliminary injunction.

That the challenge to the M&RA Action was brought under the APA makes no difference in the irreparable harm analysis. The May 29, 2026 M&RA Action is the application of a policy that the D.C. Circuit has declared likely violates LtCol Trainor's and other active-duty service members' rights to Equal Protection of the laws and thus is, *inter alia*, "contrary to constitutional right, power, privilege, or immunity," which, in turn, violates the APA. 5 U.S.C. § 706(2)(B). The irreparable injury that is tied to, and automatically flows from, likelihood of success per the *Talbott* holding flows from the likely violation of constitutional rights, not from the form in which the likely constitutional violation is carried out. Whether cast in terms of a broad, Department-of-War-wide policy or the application of that policy to an individual Marine, the violation of Equal Protection is the same, and the likelihood that such violation will be sustained establishes irreparable harm as a matter of law per *Talbott*.

Moreover, even if the M&RA Action had never issued, LtCol Trainor's forced retirement under the Hegseth Policy likely violates her constitutional rights in the same manner as the likely constitutional violation in *Talbott*, which is the alternative reason she will likely prevail on the merits. *Talbott* therefore makes clear that, because LtCol Trainor likely will prevail on her constitutional claims, as applied to her, that showing, standing alone, establishes the irreparable harm sufficient to support the preliminary injunction that she seeks.

## II. *TALBOTT* IS THE LAW OF THE D.C. CIRCUIT REGARDLESS OF WHETHER MANDATE HAS YET TO ISSUE

That the appellate mandate has yet to issue in *Talbott* makes no difference.[1] That mandate has been withheld or formally stayed has no impact on the precedential effect of a published Circuit Court panel decision. Such a decision is binding on all District Courts within the Circuit on the issue decided as well as on any subsequent Circuit panel presented with the same issue. Regardless of whether mandate has issued, such decision is binding unless it is reversed by the Circuit Court sitting *en banc* or by the Supreme Court. Federal case law makes this plain.

Thus, in *Cox v. Dep't of Justice*, 111 F.4th 198 (2d Cir. 2024), appellant argued that he need not have acknowledged a prior published decision of the Circuit Court because mandate in the earlier case had not issued and a petition for certiorari had been filed in the earlier case. *Id*. at 209. The Circuit Court disagreed:

> Let us be clear: A published opinion, such as *Behar*, becomes binding precedent when it is decided. The fact that a mandate has not yet issued means only that jurisdiction over the case has not yet shifted back to the district court; it does not undermine the immediate precedential weight of our decision.

---

[1] This Court's preliminary injunction was affirmed by the D.C. Circuit as to those *Talbott* plaintiffs who are active-duty service members. *Talbott*, 176 F.4th at 750. The injunction had been stayed pending the outcome of the appeal, *Talbott v. United States*, No. 25-5087, Dkt 2149475, Order (D.C. Cir. Dec. 9, 2025), and the appeal was concluded on June 1, 2026, *Talbott*, 176 F.4th at 720. At that point, the stay of the injunction ended by its own terms, but the D.C. Circuit, on its own motion, ordered "that the Clerk withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or rehearing en banc. <u>See</u> Fed. R. App. P. 41(b); D.C. Cir. Rule 41." No. 25-5087, Dkt. 2176042, Order (D.C. Cir. June 1, 2026). The government did not file a petition for rehearing but did file a timely motion to stay mandate pending the disposition of a petition for certiorari to the Supreme Court. No. 25-5087, Dkt. 2183623 (July 16, 2026). The government's motion to stay mandate remains pending. Thus, neither this Court's injunction (as modified on appeal) nor the appellate mandate is currently subject to a stay. Instead, the mandate remains at the D.C. Circuit pursuant to the technical operation of Fed. R. App. P. 41(b): "The court's mandate must issue 7 days after the time to file a petition for rehearing expires, or *7 days after entry of an order denying a timely* petition for panel rehearing, petition for rehearing en banc, or *motion for stay of mandate, whichever is later*." (Emphasis added).

*Id*. Other cases are to the same effect. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (District Courts committed clear error by not following Ninth Circuit decision for which mandate had been stayed; "[u]nder our law of the circuit doctrine, a published decision of this court constitutes binding authority which must be followed unless and until overruled by a body competent to do so. . . . In recognition of this principle, we have held that a stay of the mandate does not destroy the finality of an appellate court's judgment, and that a published decision is final for such purposes as stare decisis, and full faith and credit, unless it is withdrawn by the court") (citations omitted; cleaned up); *Martin v. Singletary*, 966 F.2d 944, 945 n.1 (11th Cir. 1992) ("although the mandate in *Johnson* has not yet issued, it is nonetheless the law in this circuit. A mandate is the official means of communicating our judgment to the district court and of returning jurisdiction in a case to the district court. The stay of the mandate in *Johnson* merely delays the return of jurisdiction to the district court to carry out our judgment in that case. The stay in no way affects the duty of this panel and the courts in this circuit to apply now the precedent established by *Johnson* as binding authority. Thus, *Johnson* is the law in this circuit unless and until it is reversed").

The D.C. Circuit cited the foregoing *Cox* and *Zermeno-Gomez* cases with approval in *Marin Audubon Soc'y v. FAA*, 129 F.4th 869, 870 n.1 (D.C. Cir. 2025). There, the Court was considering a stay motion under Fed. R. App. P. 41(b) but noted that its "panel decision . . . stands" even though mandate had yet to issue. *Id*. Other decisions in the D.C. Circuit likewise have recognized that the stay of appellate mandate has no impact on the precedential effect of a Circuit Court panel decision. *See Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring) ("[i]t makes no difference, as the dissent suggests, that the mandate in *Ayuda* was stayed pending disposition of the appellees' petition for certiorari. Once the *Ayuda*

opinion was released it became the law of this circuit. Stay of the mandate merely delayed return to the district court of jurisdiction over the § 265 claims and the exercise of its duty to dismiss them; it did not affect the district court's duty – or ours – to apply the law set forth in *Ayuda* to parties not involved in the appeal"); *In re Vitamins Antitrust Litig.*, 2003 WL 21802133, at *1 n.1 (D.D.C. Aug. 4, 2003) (court was required to follow D.C. Circuit decision "despite the fact that no mandate has issued"); *Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) ("Remarkably, defendants contend that plaintiffs cannot show that they are likely to succeed on the merits of their case. First, defendants argue that this Court is not bound to follow *LAVAS*, since the mandate in *LAVAS* has not yet issued from the Court of Appeals. This argument has no merit. The District Court 'is bound by the principle of stare decisis to "abide by a recent decision of one panel of [the Court of Appeals] unless the panel has withdrawn the opinion or the court en banc has overruled it".' *Association of Civilian Technicians, Montana Air Chapter v. FLRA*, 756 F.2d 172, 176 (D.C.Cir.1985) (quoting *Brewster v. Commissioner of Internal Revenue*, 607 F.2d 1369, 1373 (D.C.Cir.1979)). The fact that a party has petitioned for rehearing, automatically resulting in the stay of the mandate under Rule 41, Fed.R.App.P., is irrelevant"). Therefore, it is clear that the D.C. Circuit decision in *Talbott* on irreparable harm is precedential and binding with respect to LtCol Trainor's motion for preliminary injunction, regardless of the fact that mandate has yet to issue in *Talbott*.

Nor is there any incongruity between the relief that LtCol Trainor seeks – enjoining the May 29, 2026 M&RA Action, as re-issued on September 21, 2026, removing her from administrative absence and returning her to full active-duty status – and the fact that the *Talbott* plaintiffs cannot seek such relief now because their injunction, although affirmed on appeal, has yet to take effect because the appellate mandate has not issued. To the contrary, given the binding

nature of the D.C. Circuit *Talbott* decision on the instant case, it would be incongruous for the Court to deny LtCol Trainor's motion for preliminary injunction.

It is well established that a service member unlawfully separated from the military is entitled to be made whole through, *inter alia*, retroactive reinstatement. *E.g.*, *Dilley v. Alexander*, 627 F.2d 407, 413 (D.C. Cir. 1980) ("[j]udicial relief provided to military servicemen who have been wrongfully discharged from service has been premised upon one central principle: making the injured men 'whole'" which includes "retroactive reinstatement to the positions they held on their respective dates of separation"). Reinstatement is part of what LtCol Trainor seeks with her preliminary injunction. Reinstatement also is what any *Talbott* plaintiff who was either placed in administrative absence or separated from service during the period in which the *Talbott* injunction was stayed can seek once the mandate in the *Talbott* case issues. The fact that the *Talbott* plaintiffs have remained in administrative absence does not suggest that administrative absence is a harm that can be repaired later. Administrative absence under the Hegseth Policy did not begin until approximately June 2025, after this Court's injunction had been stayed, and the injunction remained stayed until the D.C. Circuit decided the appeal. The *Talbott* plaintiffs were not returned to duty because, for the entire time they were in administrative absence, no order was in effect that could have returned them. To the extent the panel that granted the stay pending appeal viewed their injuries as remediable, *see Talbott v. United States*, No. 25-5087, Dkt 2149475, slip op. at 23 (D.C. Cir. Dec. 9, 2025) (opinion of Katsas, J.), that view rested on its prediction that the government would prevail on the merits. However, the merits panel held the opposite and concluded from that holding that the *Talbott* plaintiffs "have been irreparably harmed." *Talbott*, 176 F.4th at 747.

LtCol Trainor's circumstances also differ in kind. A *Talbott* plaintiff in administrative absence remains in service while the case is decided. LtCol Trainor's administrative absence runs to a date certain, November 1, 2026, on which her service ends. It is that date, more than the absence that precedes it, that makes her injury irreparable. And if the Court is reluctant to order her return to duty, it need not reach that question to prevent the injury: a stay under 5 U.S.C. § 705 of the November 1, 2026 retirement date, restoring the approved date of June 1, 2027, would preserve the status quo pending a decision on the merits.

## III. <u>THE D.C. CIRCUIT DECISION IN *TALBOTT* LEFT UNDISTURBED THIS COURT'S ALTERNATIVE FINDING OF IRREPARABLE HARM</u>

Finally, it is important to note that, while the D.C. Circuit premised its finding of irreparable harm solely on the fact that the *Talbott* plaintiffs had shown a likelihood of success on their constitutional claims, the Court did not set aside or comment negatively on this Court's alternative finding that the *Talbott* plaintiffs also suffered irreparable harm in fact due to the stigmatizing aspect of the Hegseth Policy which declares them incapable of doing their military jobs for a reason that has nothing to do with actual performance. This Court found that, apart from the likely invasion of their constitutional rights, "all transgender servicemembers suffer from the irreparable reputational stigma the Military Ban espouses and forced separation from their positions" and that "brand[ing] them as less capable solely because of their transgender status" is irreparable harm. *Talbott v. United States*, 775 F. Supp. 3d 283, 332 (D.D.C. 2025).

The Court's alternative finding of irreparable harm is well supported by the case law. *See Singh*, 56 F.4th at 110 (the "indignity of being unable to serve for reasons that . . . bear no relationship to [a service member's] ability to perform" constitutes irreparable harm); *McVeigh v. Cohen*, 983 F. Supp. 215, 221 (D.D.C. 1998) ("[h]aving served honorably for the last seventeen years, Plaintiff will be separated from a position which is central to his life on the sole ground that

he has been labeled a 'homosexual,' and thus by definition unfit for service. The stigma that attaches to such an accusation without substantiation is significant enough that this Court believes it must grant the injunctive relief"); *Elzie v. Aspin*, 841 F. Supp. 439, 443 (D.D.C. 1993) ("plaintiff faces the stigma of being removed from active duty as a sergeant in the Marine Corps – a position which he has performed in a sterling fashion for eleven years – and labeled as unfit for service solely on the basis of his sexual orientation, a criterion which has no bearing on his ability to perform his job. That plaintiff has performed in exemplary fashion for eleven years clearly negates defendants' assertion that homosexuality is incompatible with being a good Marine. Plaintiff did not become any less of a Marine on the day he announced his sexual orientation"); *May v. Gray*, 708 F. Supp. 716, 719 (E.D.N.C. 1988) (finding irreparable injury where discharged soldier challenged urinalysis finding and, without a preliminary injunction, would "be forced to seek employment with a military service record that adjudges him, in effect, 'guilty' of controlled substance abuse").

Indeed, even in cases in which the plaintiff *does* have a damage remedy – and LtCol Trainor has no adequate damage remedy here, *see* Dkt. 2-1 at 47-49 – the loss of the opportunity to pursue one's chosen profession is still considered an injury that is irreparable because it cannot be fully remedied with a monetary award. *See Chalk v. U.S. District Court*, 840 F.2d 701, 709 (9th Cir. 1988) (reversing denial of preliminary injunction to teacher of hearing-impaired students contesting her reassignment to lower grade duties; "Chalk's original employment was teaching hearing-impaired children in a small-classroom setting, a job for which he developed special skills beyond those normally required to become a teacher. His closeness to his students and his participation in their lives is a source of tremendous personal satisfaction and joy to him and of benefit to them. The alternative work to which he is now assigned is preparing grant proposals.

This job is 'distasteful' to Chalk, involves no student contact, and does not utilize his skills, training or experience. . . . [Plaintiff's] injury is emotional and psychological – and immediate. Such an injury cannot be adequately compensated for by a monetary award after trial"); *Robinson v. District of Columbia Gov't*, 1997 WL 607450, *8 (D.D.C. July 17, 1997) (irreparable harm where, *inter alia*, police officer's administrative leave status took away professional advancement opportunity; "with each day that Plaintiff is out of the station house or off the streets, he loses the opportunity to gain valuable experience and training to help him achieve his career goal of becoming a police detective"); *Saunders v. George Washington Univ*., 768 F. Supp. 843, 845 (D.D.C. 1991) (unexplained interruption in teacher's employment history was irreparable harm; "Saunders obviously does not teach merely to make money: Indeed, she transferred to GWU despite a cut in pay. She teaches instead because of the 'tremendous personal satisfaction and joy' that she derives from teaching;" plaintiff would "lose the opportunity to gain a satisfaction that cannot be adequately compensated by a damages award").

By being placed in administrative absence and declared non-deployable, LtCol Trainor not only has to suffer the stigma of being labeled incapable of performing her duties as a Marine Corps officer when such a designation is completely false. She is also being denied the opportunity to continue serving her country as a Marine which is what she has devoted her entire adult life to doing. Her service will end on November 1, 2026, seven months before the date the Marine Corps approved and on a date she never requested, and no later award can restore those months of service to her. And all of this results from a policy that this Court and the D.C. Circuit have found is likely a violation of LtCol Trainor's constitutional rights. Whether based on the D.C. Circuit's holding that a likely violation of constitutional rights constitutes irreparable injury standing alone, or this Court's alternative holding that the Hegseth Policy's application to transgender service members

constitutes irreparable harm in fact, LtCol Trainor has demonstrated harm that is sufficiently irreparable to warrant the injunctive relief that she seeks.

## CONCLUSION

Plaintiff's Motion for a Preliminary Injunction should be granted.

Dated this 16th day of October, 2026.

Respectfully Submitted,

*/s/ John M. Simpson*

John M. Simpson (D.C. Bar No. 256412)
1629 K Street, NW, Suite 300
Washington, D.C. 20006-1631
Telephone: +1 202 355-6419
Fax: +1 202 403-2285
E-mail: jmsimpson@litigationwarriors.com

Peter E. Perkowski (D.C. Bar No. 1013980)
PERKOWSKI LEGAL, PC
515 S. Flower St., Ste. 1800
Los Angeles, CA 90071
Telephone: +1 213 340-5796
E-mail: peter@perkowskilegal.com

*Counsel for Plaintiff LtCol Avery A. Trainor*